```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE MIDDLE DISTRICT OF GEORGIA
                        COLUMBUS DIVISION

SANDRA BROWN,                    *

     Plaintiff,                  *

vs.                              *
                                    CASE NO. 4:13-CV-110 (CDL)
MAGNOLIA MANOR, INC., and        *
MAGNOLIA MANOR OF COLUMBUS,
INC.,                            *

     Defendants.                 *
```

O R D E R

Plaintiff believed that her employer discriminated against her fellow black employees, and she complained about it. Defendants allegedly retaliated against Plaintiff after her numerous complaints of discrimination, eventually terminating her employment. She brings this action against her alleged joint employers Magnolia Manor, Inc. and Magnolia Manor of Columbus, Inc. ("Magnolia Columbus") for race-based retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 ("§ 1981"). She also claims that Defendants unlawfully interfered with her rights under the Family Medical Leave Act

("FMLA"), 29 U.S.C. § 2615, and that they slandered her under state law.[1]

Defendants moved for summary judgment as to each of these claims (ECF No. 30). As explained below, the Court denies Defendants' motion as to Plaintiff's Title VII and § 1981 retaliation claims. The Court grants summary judgment as to Plaintiff's FMLA interference claim and state law slander claim. The Court also grants Plaintiff's Motion for Leave to File Third Amended Complaint (ECF No. 71).

## STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

---

[1] The Court previously dismissed Plaintiff's state law intentional infliction of emotional distress claim, and Plaintiff dismissed her FMLA retaliation claim.

FACTUAL BACKGROUND

When viewed in the light most favorable to Plaintiff, the facts are as follows. Plaintiff, who is black, worked for Defendants as a Human Resources Specialist.[2] Brown Dep. Ex. 1, Competitive Promotion/Salary Adjustment Request Form, ECF No. 36 at 115. She reported directly to Angela Rose, the Campus Administrator for Magnolia Columbus. Plaintiff also interacted with Cathy Tully, the Associate Vice President for Human Resources for Magnolia Manor. Tully worked at Magnolia Manor's corporate headquarters in Americus, but regularly traveled to Magnolia Columbus to conduct training. Rose and Tully are white. Serrita Chaney, who is black, was the Human Resources Assistant for Magnolia Columbus and reported to Plaintiff.

I. **Plaintiff's Complaints to Defendants of Race Discrimination**

During her employment, Plaintiff complained numerous times to Rose and Tully about Defendants' alleged race discrimination and retaliation directed toward Plaintiff's fellow employees. Brown Aff. ¶¶ 14-18, ECF No. 47. In opposition to Defendants' summary judgment motion, Plaintiff recounted the following incidents. In July 2011, Plaintiff complained to Rose that it was discriminatory to pay the newly hired black Central Supply Supervisor only $10 per hour when Rose paid the former white

---

[2] Defendants argue that Magnolia Columbus, and not Magnolia Manor, employed Plaintiff. But Plaintiff created a genuine factual dispute as to whether Defendants are a joint employer for purposes of Plaintiff's federal claims.

3

Central Supply Supervisor $11 per hour. *Id.* ¶ 15. In late November/early December 2011, Plaintiff told Rose that it appeared that Defendants were retaliating against a fellow black employee, Anna Bankston, because she complained about the discriminatory treatment of black kitchen employees. *Id.* ¶ 17. In February 2011, Plaintiff informed Rose that allowing a white job applicant to retake a failed pre-employment drug screen when black applicants were not allowed to retake them appeared racially discriminatory. *Id.* ¶ 21. In early 2012, Plaintiff spoke several times to Rose about complaints from black employees that "two white superiors would speak to only white employees but would ignore and not speak to black employees." *Id.* ¶ 22. In April 2012, Plaintiff complained to Rose about allowing a white employee to return to work after a failed drug test, despite "never allow[ing] any black employee to return to work after a failed drug test." *Id.* ¶ 25. In late April 2012, Defendants fired several black employees for using a cell phone to record a resident, and Plaintiff complained to Rose that it was "unfair and discriminatory" to "fire the black employees without an adequate, fair, or reasonable investigation." *Id.* ¶ 27. In May 2012, Plaintiff complained to Rose that it was racially discriminatory for Rose to refuse to grant a black employee the same accommodation she had given to a white employee. *Id.* ¶ 26.

Plaintiff's complaints were not shared exclusively with Rose. On May 8th or 9th, 2012, Plaintiff complained to Tully about being excluded from participating in a discipline decision for a black employee, although such participation fell within her job duties. Tully Dep. 256:22-257:4, ECF No. 38. She also complained to Tully that Defendants generally discriminated against black employees. Brown Aff. ¶ 35. Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") intake questionnaire on May 11, 2012 in which she alleged that Defendants discriminated against her because of her race by excluding her from decision-making processes involving black employees, and that Defendants discriminated against black employees by treating them less favorably than white employees in a number of ways. Brown Dep. Ex. 10, EEOC Intake Questionnaire, ECF No. 36 at 187-95.

**II. Defendants' Alleged Retaliatory Actions**

Plaintiff claims that after she complained about race discrimination, Defendants changed her job responsibilities, attempted to ostracize her from fellow employees, scrutinized her activities more closely, and made it more difficult for her to perform her job. Specifically, Defendants excluded her from discipline decisions involving black employees but allowed her to remain involved in such decisions involving white employees. Brown Aff. ¶ 32. Defendants also disabled Plaintiff's computer

5

logon, forwarded her emails to Rose, instructed other employees not to speak to her, and closely monitored surveillance footage of Defendants' facility to catch Plaintiff entering after hours while she was on sick leave.  Within a couple of days of learning that Plaintiff had begun the process of filing an EEOC charge, Defendants terminated her employment.

**III. Alleged Interference with Plaintiff's FMLA Rights**

In addition to her race-based retaliation claim, Plaintiff alleges that Defendants unlawfully interfered with her FMLA rights.  In support of this claim, Plaintiff points to the following evidence.  Plaintiff requested, and Defendants approved, FMLA leave beginning May 9, 2012.  On May 24th, Plaintiff sent Defendants a physician's note releasing her to return to work on Monday, May 28th.  Brown Aff. ¶ 60.  Sara Massey, Defendants' Benefits Coordinator, told Plaintiff not to report on Monday because it was a holiday.  Tully then emailed Plaintiff to request a May 29th meeting with her and Rose.  Rose and Tully, however, did not show up for the meeting.  Instead of reinstating Plaintiff to her previous position, Defendants terminated her effective May 31st.  Plaintiff claims the termination was related to her FMLA leave because of the timing and because Chaney told her that Rose said Plaintiff "could have [her] little sick leave but after that it's over."  Brown Aff. ¶ 72.

6

**IV. Defendants' Negative/Alleged Slanderous Reference**

After her termination, Plaintiff hired Allison & Taylor, a reference check company, to call Magnolia Manor to find out what they would say about her. Tully informed the Allison & Taylor representative that Plaintiff was not eligible for rehire due to a policy violation. Plaintiff contends that this response violated Defendants' policy and constitutes slander.

DISCUSSION

**I.   Title VII and § 1981 Retaliation Claims**

It is unlawful for an employer to discriminate against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII] or because [s]he has made a charge" under Title VII. 42 U.S.C. § 2000e-3(a).[3] Section 1981 similarly prohibits an employer from retaliating against an employee because the employee complains of race

---

[3] Plaintiff asserts Title VII retaliation claims under both the opposition and participation clauses of 42 U.S.C. § 2000e-3(a). Although Plaintiff's Second Amended Complaint could have been more precise, it clearly alleges facts supporting claims under both clauses. Plaintiff alleged that she opposed unlawful discrimination and that she filed an EEOC charge to vindicate her complaints. Out of an abundance of caution, Plaintiff filed a motion for leave to file a third amended complaint to clearly allege a participation clause claim as well as an opposition clause claim. That third amended complaint alleges the same facts as the second amended complaint, and Defendants are certainly not prejudiced by it. Accordingly, that motion is granted. Today's Order assumes that claims under both clauses have been alleged all along, and therefore, both claims are considered in this Order.

discrimination.  *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008) (holding that § 1981 encompasses claims of retaliation).  The analytical framework for retaliation claims under Title VII and § 1981 is the same.  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  The first step in that analysis is to determine whether Plaintiff established a prima facie case of retaliation.  To establish a prima facie case, Plaintiff must show: "(1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

Regarding the first element of her prima facie case, the Court finds that Plaintiff created a genuine factual dispute as to whether she engaged in protected activity when she complained of race discrimination and when she attempted to pursue those complaints by filing an EEOC charge.  While Defendants may have strong arguments at trial that Plaintiff did not have an objectively reasonable belief that Defendants engaged in unlawful discrimination, the Court finds that Plaintiff pointed to sufficient evidence to create a genuine factual dispute that must be resolved by a jury and not by this Court as a matter of law.  Accordingly, she has satisfied the first element of her prima facie Title VII and § 1981 retaliation claims.

A jury question also exists as to whether Plaintiff suffered an adverse employment action, the second element of her prima facie case. While all of Defendants' negative conduct directed to Plaintiff after she consistently complained of race discrimination may not rise to the level of an adverse employment action, the Court finds that Plaintiff pointed to sufficient evidence that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). A genuine factual dispute exists on this element.

Finally, for the third element of her prima facie case, the Court finds that Plaintiff pointed to sufficient evidence to create a genuine factual dispute as to the causal connection between her protected conduct and Defendants' retaliation. The Court recognizes that Plaintiff's burden of establishing causation is not insubstantial. She must ultimately prove that Defendants' "desire to retaliate was the but-for cause" of the alleged retaliation. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013). But Plaintiff does not have to carry that burden fully at this stage of the proceedings. To avoid summary judgment, she must simply produce sufficient evidence to create a genuine factual dispute on causation, and she has done so if only by a whisker. After being bombarded with Plaintiff's complaints of race discrimination, Defendants changed some of

her job responsibilities, excluded her from duties she previously performed, attempted to ostracize her from other employees, and made it more difficult for her to do her job. Then a mere two days after learning that Plaintiff had begun the process of filing an EEOC charge, they terminated her. While certainly not a lock, Plaintiff pointed to enough causation evidence to satisfy the third element of her prima facie case.

With Plaintiff having established a prima facie case of unlawful retaliation, the burden shifts to her employer to articulate a non-retaliatory reason for its actions. *Brown v. Ala. Dep't of Transp.,* 597 F.3d 1160, 1181 (11th Cir. 2010). And Defendants have done so, which shifts the burden back to Plaintiff to create a genuine factual dispute as to whether Defendants' stated non-retaliatory reasons are a pretext for discriminatory retaliation. *Id.* at 1181-82. Although the Court finds it a close call, the present record does not authorize deciding the issue of pretext as a matter of law. A jury question exists on this element. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's Title VII and § 1981 retaliation claims.

## II.  FMLA Interference Claim

An employee who takes FMLA leave is entitled to return from her leave "to be restored . . . to the position of employment held by the employee when the leave commenced" or "to be

restored to an equivalent position." 29. U.S.C. § 2614(a)(1). Defendants terminated Plaintiff when she returned from FMLA leave. Plaintiff claims this constitutes FMLA interference. But for Plaintiff to avoid summary judgment, a genuine factual dispute must exist as to whether her termination was causally related to her FMLA leave. "If an employer demonstrates that it would have discharged an employee for a reason wholly unrelated to the FMLA leave, the employer is not liable under the FMLA for damages for failure to reinstate." *Spakes v. Broward Cnty. Sheriff's Office*, 631 F.3d 1307, 1310 (11th Cir. 2011) (per curiam) (internal quotation marks omitted).

Defendants' reasons for terminating Plaintiff are unrelated to her FMLA leave. While Plaintiff disputes those reasons, she fails to point to any evidence to suggest that the real reason for her termination was related to her FMLA leave. In fact, Plaintiff points to evidence that she was terminated in retaliation for her complaints of racial discrimination and her participation in the EEOC charge process—not because she took FMLA leave or because Defendants sought to deny her any FMLA rights. Plaintiff does not even suggest that Defendants interfered with her taking FMLA leave. She ties her claim to being terminated after taking all the leave to which she was legally entitled. The only evidence that Plaintiff points to in support of an alternative claim for FMLA interference is her

contention that Chaney told her that Rose said Plaintiff "could have [her] little sick leave but after that it's over." Brown Aff. ¶ 72. This statement proves only that Defendants may have planned to terminate her when she returned from sick leave. It is not probative of why they terminated her.

While an employer can conceivably be liable for improperly interfering with an employee's FMLA rights regardless of the employer's motivation, there must be some connection between that interference and the employee's exercise of FMLA rights. The alleged interference here is Plaintiff's termination, but Plaintiff points to no evidence other than this alleged statement of intention to terminate to connect her termination to her FMLA leave. Plaintiff thus failed to create a genuine factual dispute on the issue of causation as it relates to her FMLA interference claim. Plaintiff's complete lack of evidence of unlawful interference with her FMLA rights stands in sharp contrast to the circumstantial evidence she relies on in support of her Title VII and § 1981 claims. Her retaliation evidence includes the fact that she was terminated a mere two days after Defendants received notice of her EEOC charge and after making numerous complaints of racial discrimination over several months. The Court therefore found a genuine fact dispute on causation as to Plaintiff's Title VII and § 1981 retaliation claims, but cannot do so regarding her FMLA interference claim.

12

Accordingly, Defendants' motion for summary judgment is granted as to that claim.

### III. Slander Claim

A person commits slander when she "[makes] charges against another in reference to his trade, office, or profession, calculated to injure him therein." O.C.G.A. § 51-5-4(a)(3). "To be actionable, a communication must be both false and malicious, and the burden of proving a statement's falsity is on the plaintiff." *Jaillett v. Ga. Television Co.*, 238 Ga. App. 885, 888, 520 S.E.2d 721, 724 (1999) (internal citations and quotation marks omitted). "To recover for oral defamation or slander, one must prove not only the making of a slanderous statement but also publication of the slander, which occurs when the slander is communicated to anyone other than the person slandered." *Scouten v. Amerisave Mortg. Corp.*, 283 Ga. 72, 73, 656 S.E.2d 820, 822 (2008).

After her termination, Plaintiff hired a company, Allison & Taylor, "to check what reference" Rose was giving about her, because Plaintiff heard from Chaney that Rose bragged about causing her to lose a job for which she had interviewed. Brown Aff. ¶ 76. Plaintiff contends it was slander when Tully (who handled the call instead of Rose) told the caller that Defendants terminated Plaintiff for violating a company policy and she was not eligible for rehire. This allegedly violated

13

Defendants' policy of only giving out certain information on former employees: dates of employment, position held, and job location. Tully Dep. Ex. 44, Magnolia Manor Employee Manual 18, ECF No. 38-1 at 24. Plaintiff says she did not solicit a reference from Tully, and had no reason to expect that Tully would say "negative, false things" about her. Brown Aff. ¶ 76.

Defendants contend Tully's reference does not constitute actionable slander under Georgia law because Tully did not say anything false—Defendants terminated Plaintiff for violating unwritten policies about using others' passwords and accessing personnel records, and that is essentially what Tully said.

Even if Tully's statements are deemed "false," they do not give rise to a claim for slander. Under Georgia law, "invited slander" is not actionable because no publication occurs if the only persons to whom the challenged information was communicated were those authorized to receive the information. *Kenney v. Gilmore*, 195 Ga. App. 407, 408, 393 S.E.2d 472, 473 (1990). "To constitute an invited libel [i]t is enough that the complainant requests or consents to the presence of a third party and solicits the publication of matter which he knows or has reasonable cause to suspect will be unfavorable to him." *Sophianopoulos v. McCormick*, 192 Ga. App. 583, 584, 385 S.E.2d 682, 683 (1989) (alteration in original) (internal quotation marks omitted). Plaintiff knew that Defendants' stated reason

14

for terminating her was that she "entered the building after regular office hours and used another employee's access code to view payroll records after [her] login was unsuccessful," even though she "had no need to access the payroll records" since she was out sick. Todd Dep. Ex. 4, Termination Letter, ECF No. 39 at 58. Moreover, Plaintiff initiated the reference check because she learned that Rose had provided negative references about her. Plaintiff clearly had reasonable cause to suspect that Defendants would provide unfavorable information. Since Plaintiff "invited" the slander, she cannot now recover for it.

Even if she did not invite the slander, Defendants could not be vicariously liable for the alleged slander committed by their employee, Tully. Vicarious liability cannot be imposed on an employer for slander of an employee unless the employer directs or authorizes the employee to make the allegedly defamatory statement. *Fuhrman v. EDS Nanston, Inc.*, 225 Ga. App. 190, 190, 483 S.E.2d 648, 649 (1997). An employer is not liable for its agents' defamatory words, "even where in uttering such words the speaker was acting for the benefit of the corporation and within the scope of the duties of his agency, unless it affirmatively appears that the agent was expressly directed or authorized by the corporation to speak the words in question." *Safety-Kleen Corp. v. Smith*, 203 Ga. App. 514, 514, 417 S.E.2d 171, 172 (1992) (internal quotation marks omitted).

Defendants authorized Tully, as a Human Resources representative, to distribute certain information about Plaintiff. But according to Plaintiff, Defendants' policy did not authorize Tully to say why Plaintiff was terminated. And she pointed to no evidence that Defendants instructed Tully to violate that policy. Therefore, Defendants cannot be liable for Tully's alleged slander.

For all of these reasons, Defendants are entitled to summary judgment on Plaintiff's slander claim.

## CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 30) is denied as to Plaintiff's Title VII and § 1981 retaliation claims and is granted as to Plaintiff's FMLA interference claim and state law slander claim. Plaintiff's Motion for Leave to File Third Amended Complaint (ECF No. 71) is granted. Plaintiff shall electronically file her Third Amended Complaint within seven days of today's Order.[4]

IT IS SO ORDERED, this 17th day of December, 2014.

                                                      S/Clay D. Land
                                                      CLAY D. LAND
                                                      CHIEF U.S. DISTRICT COURT JUDGE
                                                      MIDDLE DISTRICT OF GEORGIA

---

[4] The Court also reviewed Plaintiff's Motion to Show Cause (ECF No. 72), and it is denied.